IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **513-283-1378 (Sprint)** | Case No. 1:19-MJ-502<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Tyler D. Field, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **513-283-1378**, (the "**SUBJECT TELEPHONE**"), whose service provider is Sprint, a wireless provider headquartered at 6480 Sprint Parkway, Overland Park, KS 66251. The **SUBJECT TELEPHONE** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent (SA) of the Drug Enforcement Administration (DEA) and have been so employed since March 2016. I also serve as a U.S. Army Military Police Major in the Indiana Army National Guard and have done so for over seventeen years. Prior to being

employed with the DEA, I was employed as a police officer for the Town of Bridgewater, Massachusetts for over three years. I graduated from the U.S. Army Military Police School, Plymouth Police Academy, and DEA Basic Agent Academy. During those courses I received training in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities include conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA agent, I participated in approximately fifteen criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21, of the United States Code).

4. I am currently assigned to the Cincinnati Resident Office of the DEA. I received specialized training from the DEA, including the 18-week Basic Agent Training course. That training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Sections 841 and 846 have been committed, are being committed, and will be committed by Styles HUMMONS, Oscar TORBERT, David KEMP, and other as-yet known and unknown individuals. I believe there is probable cause that the **SUBJECT TELEPHONE** is being used in furtherance of the aforementioned crimes and that

there is also probable cause to believe that the location of the **SUBJECT TELEPHONE** will constitute evidence of those criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7. The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of Styles HUMMONS, Oscar TORBERT, David KEMP and other as-yet known and unknown individuals regarding possible violations of Title 21 United States Code, Sections 841(a)(1) and 846.

8. During the fall of 2018, Cincinnati Police Department Narcotics Unit Investigators became involved in the investigation of Styles HUMMONS. The focus of the investigation was his continued involvement in crimes of violence and his involvement in the illegal sale of controlled substances. Information obtained from a Confidential Source[1] (hereinafter referred to as "CS# 1") indicated that HUMMONS was involved in the distribution of controlled substances as well as other crimes of violence. Specifically, investigators learned that Styles HUMMONS utilized phone: (513) 693-2339 to facilitate his illegal drug sales and to communicate with others involved in the crimes of violence.

---

[1] The CS has been convicted of felony violations involving controlled substances in the past and is cooperating in exchange for monetary payments. The CS has participated in law enforcement operations where narcotics, firearms and illegally earned assets were recovered. The information provided by the CS was independently corroborated and was determined to be reliable.

9. In December, 2018, agents met with a Cincinnati Police Department confidential source (CS# 2[2]) who told agents that KEMP sells fentanyl for approximately $2,600 per ounce. CS# 2 said that during December 2018, KEMP provided CS# 2 with approximately a gram of suspected fentanyl[3] as a "tester." CS# 2 said that KEMP told CS# 2 that it was fentanyl. KEMP also told CS# 2 that KEMP currently had kilogram quantities of fentanyl. CS# 2 described the fentanyl as white with a yellow tint. CS# 2 stated that KEMP currently uses multiple telephone numbers, to include 513-276-0751.

10. From October 17, 2018, to January 4, 2019, investigators conducted approximately seven controlled purchases of heroin/fentanyl from Styles HUMMONS. During these controlled purchases, and at the direction of law enforcement, CS# 1 placed numerous recorded telephone calls to Styles HUMMONS, using phone: (513) 693-2339. During those telephone conversations, Styles HUMMONS directed CS# 1 to various locations where he would complete the narcotics purchases with CS# 1. CS# 1 was under the direction and surveillance of law enforcement during these controlled purchases. According to the Hamilton County Crime Laboratory, the drugs purchased contained a combination or mixture of heroin, fentanyl, tramadol and acetyl fentanyl.

11. On February 6 and February 7, 2019, investigators conducted physical surveillance of HUMMONS in conjunction with location information collected from phone:

---

[2] CS# 2 has been previously charged with a felony drug-trafficking violation and is cooperating for monetary payment. CS# 2 has previously been able to provide information that has been independently corroborated by law enforcement officers and your affiant considers CS# 2 reliable.

[3] CS# 2 was not expecting KEMP to give CS# 2 fentanyl during their encounter. Unsure of what to do with the fentanyl, CS# 2 discarded the fentanyl. As a result, investigators were not able to submit the suspected fentanyl for analysis.

(513) 354-9791. Investigators were able to determine the cellular device was present with HUMMONS at multiple locations. Through surveillance and call history analysis investigators concluded that HUMMONS utilizes phone: (513) 354-9791.

12. On March 11, 2019, agents reviewed call records for KEMP's telephone 513-276-0751. According to call records, there were approximately six communications between 513-276-0751 and HUMMONS' telephone number (513) 354-9791 between February 3, 2019 and February 12, 2019. Based on my knowledge that investigators have conducted multiple controlled purchases from HUMMONS, my knowledge that investigators have concluded that telephone number (513) 354-9791 is utilized by HUMMONS, CS# 2's statements that KEMP is a source of supply for heroin/fentanyl, and CS# 2's statements that KEMP utilizes 513-276-0751, I believe that the communications between HUMMONS, using (513) 354-9791, and KEMP, using 513-276-0751, were in furtherance of their drug trafficking activities.

13. On March 12, 2019 the Honorable Stephanie K. Bowman signed a search warrant authorizing the acquisition of precise location information concerning KEMP's telephone 513-276-0751. That same day, I began receiving geo-location information concerning KEMP's telephone 513-276-0751.

14. On March 13, 2019, at approximately 8:40 p.m., the Honorable Ted N. Berry, Municipal Court Judge in Hamilton County, Ohio, signed a search warrant authorizing the search of Oscar TORBERT's stash house located at 2504 Kipling Avenue, Apartment 2, to include the common basement. At approximately 8:50 p.m., the DEA Cincinnati Resident Office and the Cincinnati Police Department executed the search warrant. Officers/agents made entry into 2504 Kipling Avenue, Apartment 2, using a key on the key chain that was previously seized from Oscar TORBERT. Inside the apartment, officers/agents located a small bag containing approximately a gram of cocaine, an empty kilogram-sized vacuum seal bag with heroin/fentanyl

residue, suspected drug ledgers, and drug preparation and packaging materials to include gloves, a scale, a blender, a vacuum sealer, and vacuum seal bags. Agents are aware that drug traffickers often obtain controlled substances in kilogram-sized quantities and then use blenders and cutting materials to add volume to the controlled substances for future distribution. I am also aware that drug traffickers often use scales to measure out controlled substances for future purchase. Consequently, I believe that the empty kilogram-sized vacuum seal bag previously contained a quantity of controlled substances that TORBERT subsequently distributed. Analysis from the Hamilton County Crime Laboratory revealed that the residue from the kilogram-wrapper was positive for the presence of heroin, fentanyl and tramadol and that the other white substance seized was positive for the presence of cocaine.

15. In the common area in the basement, officers/agents located a locked closet labelled with the number "1" on it. A key from the key chain previously seized from TORBERT opened that closet. Inside the closet, officers/agents located two presses with suspected heroin/fentanyl residue and three firearms, two of which were loaded, to include a Glock pistol. Based on my training and experience, I am aware that drug traffickers often use presses to shape controlled substances into a brick form for later distribution. I spoke with the resident of 2504 Kipling Avenue, apartment 1, who told me that the closet marked with "1" on it was not his assigned storage closet. The resident showed me the location of his unit's assigned closet, which was located in a different area of the basement.

16. Also located in the common area in the basement was a stove unit. Officers/agents moved the stove and located approximately 1,000 grams of heroin/fentanyl. Analysis from the Hamilton County Crime Laboratory revealed that the powder found consisted of approximately 977 grams of a combination of valeryl fentanyl, fentanyl and tramadol. Based on my training, experience, discussions with other law enforcement officers/agents, my knowledge that

TORBERT possessed keys to 2504 Kipling Avenue, Apartment 2, where officers/agents located an empty, kilogram-sized bag containing heroin/fentanyl and tramadol residue, drug preparation and packaging material, and a small bag containing cocaine, my knowledge that TORBERT also possessed keys to a closet in the common area in the basement of 2504 Kipling Avenue where officers/agents located presses with suspected heroin/fentanyl residue and three firearms, and my knowledge that officers/agents located approximately 977 grams of fentanyl mixture in the common area in the basement in close proximity to the storage closet, I believe that TORBERT possessed the 977 grams of fentanyl mixture. I further believe that TORBERT intended to distribute these controlled substances.

17. On March 15, 2019, the Honorable Stephanie K. Bowman, signed a search warrant authorizing the search of 1933 Chaucer Drive, Apartment D, Cincinnati, Ohio. Later that day, officers executed the search warrant and located approximately 20 mobile phones, which are believed to have been previously used by TORBERT in furtherance of his drug-trafficking activities.

18. On March 20, 2019, United States Magistrate Judge Stephanie K. Bowman signed search warrants authorizing the search of the mobile phones seized from 1933 Chaucer Drive, Apartment D.

19. While reviewing the contents of TORBERT's telephone assigned call number 513-696-2359, agents observed WhatsApp communications between TORBERT, using call number 513-696-2359 and an unknown person using call number 323-613-9242 (UP9242), which occurred on September 17, 2018. Following is an excerpt of the communications:

| UP9242 at 1:51 p.m. | You changing 2 and giving 64 right |
| TORBERT at 1:52 p.m. | Yup |
| UP9242 at 1:52 p.m. | He waiting on you |

7

| | |
|---|---|
| TORBERT at 6:43 p.m. | One of em purple |
| TORBERT at 6:43 p.m. | Literally |
| UP9242 at 6:55 p.m. | It's probably the wrap |
| UP9242 at 6:55 p.m. | Have them check they supposed to be good |
| UP9242 at 7: 18 p.m. | My boy said purple good |

20. Based on my training and experience, I believe that UP9242 was asking TORBERT if TORBERT was going to purchase two quantities of controlled substances. I further believe that when TORBERT later obtained the controlled substances, one of the quantities was purple. I also believe that UP9242 told TORBERT that the color of the controlled substances was turned purple due to the material that was used to package the controlled substances.

21. While reviewing the contents of TORBERT's telephone assigned call number 513-696-2359, I also observed text messages between TORBERT and KEMP, using 513-276-0751, on September 19, 2018. Following is an excerpt of the communications:

| | |
|---|---|
| KEMP at 9:11 a.m. | Bra what time you coming out am free all day |
| TORBERT at 9:13 a.m. | I'ma be out in a sec |
| KEMP at 9:13 a.m. | Ok |
| KEMP at 2:36 p.m. | Bra when you coming towards this way |
| TORBERT at 2:37 p.m. | Way |
| KEMP at 2:44 p.m. | Am in the hood |
| TORBERT at 2:46 p.m. | Ok I'm bout to send unc to show the new shoes |
| TORBERT at 2:47 p.m. | They color crazy but I been getting all the |

8

|  | likes |
|---|---|

22. Based on my training, experience, CS# 2's statements that KEMP was a source of supply for heroin/fentanyl, my knowledge that approximately 977 grams of fentanyl was seized from TORBERT's stash location, and my belief that TORBERT and UP9242 previously discussed the distribution of controlled substances that were purple in color, I believe that when TORBERT told KEMP that TORBERT was going to send an unknown third person to show KEMP "shoes" that were a "crazy" color and were getting "all the likes", TORBERT was telling KEMP that TORBERT had controlled substances that were purple but that TORBERT's customers liked the controlled substances.

23. On March 29, 2019, at approximately 11:13 a.m., geo-location information indicated that KEMP's telephone 513-276-0751 was located within approximately 2,301 meters of the area of 3114 Veazey Avenue, Cincinnati, Ohio. At approximately 11:35 a.m., agents observed an individual briefly meet with the occupants of a silver Nissan SUV with Ohio license plates HQJ2806 in the parking lot of the City Limits Laundry and Tan located at 5262 Crookshank Road, Cincinnati, Ohio. The area of 3114 Veazey Avenue is located within approximately 825 meters of 5262 Crookshank Road. According to the Ohio Bureau of Motor Vehicles, the Nissan was registered to Enterprise Rental Car. Based on my training and experience, I am aware that drug traffickers often use rental vehicles to distribute controlled substances in order to avoid detection from law enforcement. Officers/agents identified KEMP as the driver and Joshua HOPGOOD as the front passenger. The individual entered the Nissan and then moments later exited the Nissan and departed the area. Based on my training, experience, discussions with other law enforcement officers/agents, I am aware that meetings

9

between drug traffickers to either distribute controlled substances or discuss the future distribution of controlled substances are often very brief.

24. Following the meeting, the Nissan departed the area and travelled eastbound through multiple residential neighborhoods. At approximately 12:00 p.m., surveillance was terminated in the vicinity of Harrison Avenue and Lafueille Avenue, Cincinnati, Ohio. At approximately 12:02 p.m., geo-location information indicated that KEMP's telephone 513-276-0751 was located within approximately 1,575 meters of the area of 2818 Lafeuille Avenue, which was in close proximity to were surveillance was terminated. Based on my knowledge that KEMP's telephone 513-276-0751 travelled in a manner consistent with KEMP's observed movements, I believe that KEMP possessed telephone 513-276-0751 at the time of the drug transaction.

25. In March 2019, CS#2 told agents that KEMP was now using telephone number 513-348-8716 and was soon going to stop using telephone number 513-276-0751. Beginning on April 6, 2019, I learned that Sprint was no longer able to locate KEMP's telephone 513-276-0751. Consequently, I believe that KEMP stopped using telephone number 513-276-0751.

26. On April 19, 2019, HUMMONS was arrested by the Cincinnati Police Department based on an indictment for charges which included murder, attempted murder, and conspiracy to commit murder.

27. Based on my training, experience, discussions with other law enforcement officers/agents, CS#2's statements that KEMP is a source of supply for heroin/fentanyl, my belief that KEMP, using telephone number 513-276-0751, previously communicated with HUMMONS in furtherance of a drug trafficking conspiracy, my knowledge that HUMMONS was arrested by the Cincinnati Police Department for murder, attempted, murder, and conspiracy to commit murder, among other charges, my belief that KEMP, using telephone number 513-

10

276-0751, previously communicated with TORBERT regarding the distribution of controlled substances, my belief that KEMP possessed telephone number 513-276-0751 during a drug transaction on March 29, 2019, CS#2's statements that KEMP was going to stop using telephone number 513-276-0751 and start using telephone number 513-348-8716, and my belief that KEMP stopped using telephone number 513-276-0751 on or around April 6, 2019, I believe that KEMP had shifted his drug trafficking activities from telephone number 513-276-0751 to telephone number 513-348-8716.

28. On May 3, 2019, the Honorable Stephanie K. Bowman signed a search warrant authorizing the acquisition of precise location information concerning telephone number 513-348-8716. Through physical surveillance in conjunction with geo-location information, I confirmed that KEMP was the user of telephone number 513-348-8716.

29. On May 14, 2019, at approximately 7:50 a.m., geo-location information indicated that telephone number 513-348-8716 was located within approximately 2,301 meters of the area of 3114 Veazey Avenue, Cincinnati, Ohio. At approximately 8:30 a.m., the DEA Cincinnati Resident Office established surveillance in the area of 3142 W. Tower Avenue. 3142 W. Tower Avenue is located within approximately 145 meters from the area of 3114 Veazey Avenue.

30. At approximately 12:21 p.m., agents observed a grey Nissan Maxima with Ohio license plates HRL7644 driven by an unidentified black male park in the driveway of 3142 W. Tower Avenue. According to the Ohio Bureau of Motor Vehicles, Ohio license plates HRL7644 are registered on a gray 2019 Nissan Maxima to Enterprise Rental Car. Based on my training and experience, I am aware that drug traffickers often use rental vehicles to distribute controlled substances in order to avoid detection from law enforcement. At approximately 12:22 p.m., agents observed KEMP wearing a gray hooded sweatshirt walk away from the front door of 3142 W. Tower Avenue and enter the front passenger door of the Maxima. Moments later, the

11

Maxima departed the driveway and travelled west on W. Tower Avenue towards Glenway Avenue.

31. At approximately 12:24 p.m., the Maxima stopped at the Shell Gas Station located at 5984 Glenway Avenue, Cincinnati, Ohio and parked next to a gas pump. An individual walked to the Maxima and entered the rear driver's side door. Moments later, the individual exited the Maxima and got into the individual's vehicle and departed the area, on Werk Road. The Maxima drove to another gas pump and remained parked. Based on my training, experience, discussions with other law enforcement officers/agents, I am aware that meetings between drug traffickers to either distribute controlled substances or discuss the future distribution of controlled substances are often very brief. Based on CS#2's statements that KEMP is a source of supply and my observations of KEMP briefly meeting with an individual in a manner consistent with drug distribution, I believe that KEMP was involved in a drug transaction.

32. On June 6, 2019, the Honorable Karen L. Litkovitz, United States Magistrate Judge in the Southern District of Ohio, signed a search warrant authorizing the acquisition of precise location information concerning telephone number 513-348-8716.

33. Beginning on June 30, 2019, I learned that Sprint was no longer able to locate KEMP's telephone number 513-348-8716. Consequently, I believe that KEMP stopped using telephone number 513-348-8716. Based on my training and experience, I know that drug traffickers often change telephone numbers in an effort to avoid detection from law enforcement.

34. On July 2, 2019, I reviewed call records for ten of KEMP's frequent telephone contacts to and from telephone number 513-348-8716. I observed that beginning on or around June 28, 2019, six of these contacts began calling 513-283-1378 (the **SUBJECT TELEPHONE**.) On July 2, 2019 I received call and subscriber records for the **SUBJECT TELEPHONE**. According to subscriber records, the **SUBJECT TELEPHONE** was subscribed

12

to Nellie Curry on June 28, 2019. Based on my training, experience, and my involvement in this case, I am aware that drug traffickers, and KEMP in particular, use mobile telephones subscribed in other people's names in order to avoid detection from law enforcement. According to call records, of the 32 unique telephone numbers in contact with the **SUBJECT TELEPHONE** between June 28, 2019 and July 1, 2019, nine (28%) were previously in contact with KEMP's telephone number 513-348-8716. Based on my training, experience, my belief that KEMP used telephone number 513-276-0751 in furtherance of his drug trafficking activities, my belief that KEMP shifted his drug activities from telephone number 513-276-0751 to 513-348-8716, and my knowledge that drug traffickers often change telephone numbers to avoid detection from law enforcement, I believe that the significant amount of common contacts between telephone number 513-348-8716 and the **SUBJECT TELEPHONE** indicates that KEMP is the user of the **SUBJECT TELEPHONE** and has now shifted his drug trafficking activities from telephone number 513-348-8716 to the **SUBJECT TELEPHONE.**

35. Based on my training, experience, discussions with other law enforcement officers/agents, CS#2's statements that KEMP is a source of supply for heroin/fentanyl, my belief that KEMP, using telephone number 513-276-0751, previously communicated with HUMMONS in furtherance of a drug trafficking conspiracy, my knowledge that HUMMONS was arrested by the Cincinnati Police Department for murder, attempted, murder, and conspiracy to commit murder, among other charges, my belief that KEMP, using telephone number 513-276-0751, previously communicated with TORBERT regarding the distribution of controlled substances, my belief that KEMP possessed telephone number 513-276-0751 during a drug transaction on March 29, 2019, CS#2's statements that KEMP was going to stop using telephone number 513-276-0751 and start using telephone number 513-348-8716, my belief that KEMP shifted his drug trafficking activities from telephone number 513-276-0751 to telephone number

13

513-348-8716, my belief that KEMP conducted a drug transaction on May 14, 2019, my belief that KEMP stopped using telephone number 513-348-8716 on or around June 30, 2019, my knowledge that the **SUBJECT TELEPHONE** was subscribed on June 28, 2019, and my knowledge that the **SUBJECT TELEPHONE** is communicating with nine frequent contacts of KEMP's previous telephone number 513-348-8716, I believe that KEMP has shifted his drug trafficking activities to the **SUBJECT TELEPHONE.**

36. Based on the information set forth in this affidavit, I believe that there is probable cause to believe that the **SUBJECT TELEPHONE** is being utilized in ongoing criminal activity, specifically in violation of Title 21 U.S.C. §§ 841 and 846. I believe there is probable cause to obtain the information requested for a period of 30 days and that the information will assist law enforcement in identifying, dismantling and disrupting KEMP's illegal drug dealing activities.

37. In my training and experience, I have learned that SPRINT is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records**.** E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles

14

apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

38. Based on my training and experience, I know that SPRINT can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on SPRINT's network or with such other reference points as may be reasonably available.

39. Based on my training and experience, I know that SPRINT can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as SPRINT typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

40. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

41. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the

Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

42. I further request that the Court direct SPRINT to disclose to the government any information described in Attachment B that is within the possession, custody, or control of SPRINT for a period of 30 days. I also request that the Court direct SPRINT to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with SPRINT's services, including by initiating a signal to determine the location of the Target Cell Phone on SPRINT's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate SPRINT for reasonable expenses incurred in furnishing such facilities or assistance.

43. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

44. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of

16

the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Tyler D. Field
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this ___8th___ day of July 2019.

Hon Stephanie K. Bowman
United States Magistrate Judge

17

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **513-283-1378** (the "Target Cell Phone"), whose wireless service provider is Sprint, a wireless provider headquartered at 6480 Sprint Parkway, Overland Park, KS 66251.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of SPRINT including information about the location of the cellular telephone if it is subsequently assigned a different call number.

**ATTACHMENT B**

**Particular Things to be Seized**

I. **Information to be Disclosed by the Provider**

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty (30) days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of SPRINT, SPRINT is required to disclose the Location Information to the government. In addition, SPRINT must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with SPRINT's services, including by initiating a signal to determine the location of the Target Cell Phone on SPRINT's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate SPRINT for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

II. **Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of Title 21 United States Code, Sections 841(a)(1) and 846 involving David KEMP and other known and as-yet unknown individuals.